**Tracy A. McKENZIE, Plaintiff–Appellee,**

v.

**COOPER, LEVINS & PASTKO, INC., d/b/a McDonald's Restaurant, a/k/a McDonalds, Defendants,**

**CLP Corporation, Defendant–Appellant.**

**No. 91–7335.**

United States Court of Appeals, Eleventh Circuit.

May 17, 1993.

Lee H. Zell, Susan S. Wagner, Berkowitz, Lefkovits, Isom & Kushner, P.C., Birmingham, AL, Philip W. Tone, Jenner & Block, Chicago, IL, for defendant-appellant.

Robert L. Wiggins, Jr., Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff-appellee.

**1184**

Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and CLARK, Senior Circuit Judge.

TJOFLAT, Chief Judge:

CLP Corporation appeals from a district court judgment awarding $206,136.62 as reasonable attorney's fees to recover $8,618.06 in backpay in a Title VII gender discrimination case. Because we find that the district court improperly enhanced the lodestar, we affirm the award as modified.

## I.

Although the Supreme Court has counseled that a "request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), it is not surprising that the battle over $200,000 in fees would make a $9,000 trial on the merits look like a preliminary skirmish. Increasingly, Title VII litigation is fees litigation, not civil rights litigation. This case is no exception.

Tracy A. McKenzie's first work experience was as a crewperson in a McDonald's restaurant owned and operated by CLP. She worked part-time from August 1983 until she was discharged on October 19, 1984. In December 1985, McKenzie brought this suit, alleging sexual harassment and discharge from employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1988). McKenzie sought (1) "a declaratory judgment holding that defendant's acts, policies, practices, and procedures ... have violated and continue to violate the rights of plaintiff and all female employees"; (2) an injunction preventing the defendants from discriminating against women; (3) backpay and reinstatement; and (4) costs and reasonable attorney's fees.

The district court conducted a bench trial on September 17–18, 1986, and issued a judgment and permanent injunction in favor of the plaintiff on December 29, 1986.

The court found that CLP had violated Title VII by discharging McKenzie because of her sex, and awarded her reinstatement, backpay in the amount of $8,618.10, and reasonable attorney's fees. The district court enjoined CLP from further discrimination against McKenzie because of her sex. The court did not find that CLP had discriminated against its other female employees, nor did it enjoin CLP from continuing any employment policy or practice.

The judgment required the plaintiff's attorney to file "an itemized statement describing his services rendered and expenses incurred." This itemized statement was filed twenty-three months later on November 29, 1988. More than two years thereafter, on March 29, 1991, the district court entered a final judgment awarding $206,136.62 to plaintiff's counsel. In its accompanying Memorandum of Opinion, the court found the lodestar fee to be $98,810.50, and allowed $4,101.05 in expenses. The court enhanced the lodestar by $71,780.50 for contingency. The district court further enhanced the award by $31,444.57 to represent prejudgment interest for the period from March 30, 1989 to March 29, 1991.

CLP appeals from this judgment, claiming (1) the fee application was untimely, (2) the fees were unreasonable, and (3) the enhancement was improper.[1] We conclude that the district court did not abuse its discretion in considering the application or determining the amount of the lodestar, but that intervening Supreme Court precedent has precluded the contingency enhancement.

## II.

We review a district court's award of fees for abuse of discretion. *Davis v. Locke,* 936 F.2d 1208, 1214 (11th Cir.1991); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1581 (11th Cir.1987). The district court "has great latitude in formulating attorney's fees awards," subject only to the necessity of explaining its reasoning so that we can undertake our review. *Gilmere v. City of Atlanta,* 931 F.2d 811, 814 (11th Cir.1991) (per curiam).

**1.** We need not address CLP's other arguments, as they are meritless.

■ CLP contends that the fee application was untimely, and as a result all fees should be denied. The December 29, 1986 judgment required the plaintiff's attorney to file "an itemized statement describing his services rendered and expenses incurred" by February 6, 1987. CLP filed a Notice of Appeal on January 29, 1987, contesting only the calculation of McKenzie's backpay. After three conversations with the district court's law clerk, plaintiff's counsel elected not to file the itemization, relying on that court's custom of not requiring such an itemization while an appeal was pending. On October 28, 1987, this court summarily affirmed the calculation of McKenzie's backpay award. *McKenzie v. CLP Corp.*, 833 F.2d 1020 (11th Cir.1987) (Table). Thirteen months later, on November 29, 1988, plaintiff's counsel filed a Motion for Attorney's Fees and Expenses with the required itemization.[2] We do not find the motion to have been fatally late. Although we are dismayed by the torpor below, we find no unfair prejudice to the defendant.[3]

■ CLP also objects to the calculation of the lodestar by the court, arguing that the fee award was grossly excessive in light of the simplicity of the case and the results obtainable. Indeed, the lodestar fee of nearly $100,000 seems preposterous when compared to the $9,000 recovery.[4] Nevertheless, the district court found the number of hours expended and the rate requested to be reasonable. Despite our considerable skepticism, we cannot set aside these findings as clearly erroneous. *See City of Riverside v. Rivera*, 477 U.S. 561, 581–87, 106 S.Ct. 2686, 2697–2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring in the judgment) ("In sum, despite serious doubts as to the fairness of the fees awarded in this case, I cannot conclude that the detailed findings made by the District Court ... were clearly erroneous, or that the District Court abused its discretion in making this fee award.").[5]

■ Finally, CLP objects to the district court's enhancement of the fee award. The district court enhanced the lodestar in order to compensate plaintiff's attorneys for contingency:

**2.** McKenzie argues that her entitlement to fees was established as the law of the case when we affirmed the district court's December 29, 1986 judgment. We disagree. CLP could not have appealed the "award of fees" contained in that judgment. An order which determines that a party is entitled to fees, but which does not establish an amount, is not appealable. *Fort v. Roadway Express, Inc.*, 746 F.2d 744, 747 (11th Cir.1984).

**3.** Indeed, the defendant benefitted by the listless pace of the fees litigation in this case. Had the fees been awarded in 1987, the enhancement would not have been precluded by Supreme Court precedent. *See City of Burlington v. Dague*, —— U.S. ——, —— ––––, 112 S.Ct. 2638, 2641, 2643–44, 120 L.Ed.2d 449 (1992) (prohibiting contingency enhancements in most fee-shifting cases).

**4.** It is often argued that attorney fees should not be constrained by the amount of recovery. First, it is said that the damages award undervalues the individual's recovery. The rights vindicated "cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (Brennan, J., plurality opinion) (citing *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–55, 55 L.Ed.2d 252 (1978)); *Barrow v. Falck*, 977 F.2d 1100, 1104 (7th Cir.1992) ("Mon-

etary awards understate the real stakes."); *see also* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913 ("[T]he amount of fees awarded [should] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature."). Second, damage awards may not fully reflect the public benefits of plaintiffs' verdicts in civil rights litigation. *Rivera*, 477 U.S. at 575, 106 S.Ct. at 2695; *Barrow*, 977 F.2d at 1104. Third, a strenuous defense may force the plaintiff "over budget." *See Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir.1992). Finally, higher fees enable litigants to attract competent counsel. *Rivera*, 477 U.S. at 576–77, 106 S.Ct. at 2695–96. Although there are weighty counterarguments to these claims, *see id.* at 588–96, 106 S.Ct. at 2701–05 (Rehnquist, J., dissenting), the High Court has not yet been persuaded by them. While we do not doubt that higher attorney's fees are attractive to attorneys, at some point we must wonder whether they may prove too attractive.

**5.** This is no invitation for plaintiff's attorneys to "milk" the straightforward civil rights case—most defendants would preempt a big fee award through the use of either a settlement offer or an offer of judgment.

[T]he Court finds that the relevant market, i.e., the state of Alabama, compensates for contingency representations in comparable fields of law at rates ranging from two to eight times the noncontingent rates. In Title VII race cases in Alabama, an enhancement of at least 100% is necessary in order to attract competent counsel in such cases.

Record, vol. 1, no. 61, at 9. The district court relied on *Lattimore v. Oman Construction*, 868 F.2d 437, 439–40 (11th Cir. 1989), which was still good law at that time. *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir. 1991). *Lattimore* affirmed a 100% contingency enhancement in a Title VII race case.[6]

In June 1992, however, the Supreme Court determined that enhancement for contingency is not permitted under federal fee-shifting statutes. *City of Burlington v. Dague*, — U.S. —, —, 112 S.Ct. 2638, 2641, 2643–44, 120 L.Ed.2d 449 (1992); *see also Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989) (holding that case law construing "reasonable" fees applies to all similar federal fee-shifting statutes). This holding effectively overruled *Lattimore*. We must therefore reverse the contingency enhancement granted by the district court.

### III.

An erroneous fee award normally necessitates remand for recalculation. Here the record is well-developed, and we can determine the proper award without further findings by the district court. We delete only the *Lattimore* enhancement and the prejudgment interest thereon. We affirm the district court's award of fees and expenses of $102,911.55, with prejudgment interest of $18,524.08, for a total of $121,435.63.

AFFIRMED as modified.

---

6. The instant case, of course, was not a Title VII race case, but rather a Title VII gender case.