465 So.2d 507 (1985)
Captain Louis S. LIVINGS, District Nine Supervisor, Florida Marine Patrol, and State of Florida Department of Natural Resources, Petitioners,
v.
Wendell DAVIS, Gilbert Grey, and Harry Robert Jones, Respondents.
No. 63001.
Supreme Court of Florida.
February 21, 1985.
Rehearing Denied April 12, 1985.
*508 Kevin X. Crowley, Gen. Counsel, Dept. of Natural Resources, Tallahassee, for petitioners.
David Paul Horan and Lawrence L. Davis of the Law Firm of David Paul Horan, Key West, for respondents.
Carol E. Dinkins, Asst. Atty. Gen., Donald A. Carr and Wells D. Burgess, Attys., Dept. of Justice, and Craig R. O'Connor and Katherine Pease, Attys., Nat. Oceanic and Atmospheric Admin., Washington, D.C., amicus curiae for The Secretary of Commerce of the U.S.
SHAW, Justice.
This cause is before this Court on a petition to review the decision of the Third District Court of Appeal in Livings v. Davis, 422 So.2d 364 (Fla. 3d DCA 1982). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The respondents were charged on March 31, April 13, and May 2, 1981, respectively, with violations of section 370.15(2)(a), Florida Statutes (1979), which prohibited the taking or possession of small shrimp or prawn within or without the waters of the State of Florida. Respondents were arrested for possession of undersized shrimp taken from waters outside Florida's nine-mile Gulf boundary. The three vessels involved were licensed by the State of Florida. The trial court found section 370.15(2)(a) unconstitutional. The district court affirmed per curiam on the authority of Tingley v. Allen, 397 So.2d 1166 (Fla. 3d DCA 1981), and certified conflict with Department of Natural Resources v. Southeastern Fisheries Association, 415 So.2d 1326 (Fla. 1st DCA 1982).
It is the petitioners' position that a state can regulate the fishing activities of its citizens beyond the state's territorial waters when there is no conflict with a federal regulatory scheme. We agree. For reasons hereinafter expressed, the district court opinion is quashed.
In 1976 Congress passed the Magnuson Fishery Conservation and Management Act, 16 U.S.C. section 1801 (1976), et seq. (MFCMA), for the purpose of conserving and managing the fishery resources off the *509 coasts of the United States. 16 U.S.C. § 1801(b). Section 1856(a) provides:

In general.  Except as provided in subsection (b) of this section nothing in this chapter shall be construed as extending or diminishing the jurisdiction or authority of any State within its boundaries. No State may directly or indirectly regulate any fishing which is engaged in by any fishing vessel outside its boundaries, unless such vessel is registered under the laws of such State.

16 U.S.C. § 1856(a) (1976) (emphasis supplied). The United States Secretary of Commerce in his amicus brief submits that the act authorized otherwise constitutional state regulation of fishing by state registered vessels in the state's extraterritorial waters in the absence of a conflicting regulation implementing a federal plan managing the same fishery. On May 20, 1981, the Gulf of Mexico Shrimp Fishery Management Plan, developed under the MFCMA, was implemented by the Secretary of Commerce. It declared that there shall be no minimum size requirements for shrimp harvested in the federal fishery conservation zone. The Florida Legislature, in recognition of the conflict between the federal management plan and section 370.15(2)(a), Florida Statutes (1979), amended the state statute to provide that it would apply only to shrimp taken from waters within the state. This bill became law on July 8, 1981.
There is no question that in matters affecting its legitimate interest a state may regulate fishing by its registered vessels outside its territorial waters until conflicting federal regulations are implemented regarding such fishing. Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941). Petitioners concede that implementation of the Gulf of Mexico Shrimp Fishery Management Plan was preemptive legislation.
The issue before this Court is whether enactment of the MFCMA constituted federal preemption prior to implementation of the federal management plan. The respondents would have us declare that no state extraterritorial fishing regulations survived the enactment of the MFCMA. We are not persuaded. We find nothing in the MFCMA that would curtail the state's extraterritorial jurisdiction over its registered vessels. Unlike the Gulf of Mexico Shrimp Fishery Management Plan, which specifically addressed the harvesting of minimum size shrimp in the federal fishery conservation zone and evidenced an obvious federal intent to preempt jurisdiction over fishing in this zone, the MFCMA makes no attempt to preempt the field, but in fact recognizes continued state jurisdiction over vessels registered under the laws of the various states. It is the opinion of this Court that the Florida statute under which the respondents were charged did not conflict with any existing federal regulation; therefore, Florida was not precluded from enforcing its penal statute relative to the taking or possession of small shrimp or prawn within or without the waters of the state. Language to the contrary in Tingley is disapproved.
The district court opinion is quashed and the cause is remanded to the district court for action consistent with this opinion.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
I dissent for the reasons stated in my dissent in Southeastern Fisheries, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984).